May it please the Court, I'm James Laughlin, and I represent the appellant Jose Murillo. Mr. Murillo raises two issues that are specific to him, whether there was insufficient evidence to convict him of simple assault and whether the simple assault jury instruction was plainly erroneous. I think those issues are pretty straightforward and clearly covered by the briefs, and so unless the Court has questions on those, I'll defer the rest of my time to my co-counsel. Thank you, Mr. Laughlin. I understand Ms. Landau is next. Good morning, Ms. Landau. Good morning. May it please the Court. I represent Mr. Moreno, and I'd like to address briefly in my limited time two issues. First, the denial of the motion to appoint new counsel for Mr. Moreno, and second, the question of the fact that the testimony came in in violation of Bruton, or whether you consider hearsay of Bruton. Talk about that briefly. So, Mr. Moreno, this case is unusual in a couple of respects. The denial of appointment of counsel comes up all the time, and there's a myriad of case law on it, and Mr. Moreno is different in a couple of respects. First of all, Mr. Moreno was not somebody who had difficulty with counsel prior. He gave his counsel a chance. He was patient with her, and only when she failed to conduct a reasonable investigation of his defense did he move for a new counsel. Now, what's different about this case is here, counsel admitted on the record that she hadn't interviewed any of the witnesses, and then she rather cavalierly said that there was a joint defense and that she considered that the government had blown the conspiracy case up out of all proportion. I must say that arguing that the government has blown its case out of proportion is not a reasonable defense strategy. Who should she have interviewed and did not? You know, Your Honor, that's not in the record. But she says there was a list of witnesses that she had and they hadn't been interviewed. Presumably, they were other inmates. One of the things that makes this case unique, as I understand it, was the crime was all caught on tape. It's true. Mr. Moreno was on tape, and the only – and that's why, in a way – So you sort of wonder who should she have interviewed to – Well, Your Honor, it's critical for a couple of things. First of all, as you know, the issue of counsel is structural error. And Mr. Moreno was concerned with the conspiracy to murder charge. And the reason he was so concerned is that was the only charge that carried a maximum sentence of life. So if the government had been able to prove that, in fact, he was guilty of conspiracy to commit murder, he would have been faced with the potential of life imprisonment rather than a term of years. And given his rather noteworthy criminal history, that was certainly a realistic possibility. Now, she didn't seem to take that charge seriously. And she even said in the hearing, she said, Mr. Moreno is his own best witness. And, you know, to say that somebody with a long criminal history who's an admitted member of the Mexican mafia is his own best witness is a little cavalier. Maybe, but maybe not. Well, maybe, maybe not. And the reason maybe not is because maybe he's got a story that nobody's going to substantiate, so let him tell it himself. And he did tell his story, and he would have told his story. But in fact, the fact is here, counsel conceded that she didn't interview his witnesses. And that makes this not merely a difference about strategy, but it makes it brings it into the realm of ineffective assistance of counsel and the failure to conduct a reasonable investigation. Does it matter that the question that the judge asked you as we started, who should she have interviewed that she didn't? On this record? On the record, what the record says is there were a list of inmate witnesses, and counsel conceded they hadn't been interviewed. I don't think they have to be named and identified. I don't think that the defense... Do we have to even have any idea of what they might have said? I don't think, no, because this is structural. What it goes to is not whether the error was harmless, but this is structural error. Your appellate court should say, if the accused names some people and says he hasn't, and they weren't interviewed, regardless of the facts, his counsel has to go and interview them. Well, I think that counsel either, I mean, what Strickland says, in terms of ineffective assistance, is counsel has to either conduct a reasonable investigation or make enough of a reasonable investigation as to why further investigation is unnecessary, and that didn't occur here. I mean, counsel's other, I mean, I think I spelled it out. Do you have to rule out the video in order to make the argument you're just making? No, I don't, because the, if the court, if the court abused its discretion in denying the motion for a substitution of counsel, that is structural error. And the videotape is not relevant. Now, in point of fact, Mr. Moreno, I mean, actually, yes, it has to be a reversal on all counts, because it is structural error. Now, Mr. Moreno, in fact, admitted guilt of counts 3 and 4, but, and I think he probably would do so again, but he, you know, he did not admit guilt to count 2, and that's, you know, certainly a reversal would be required on that. I just note that I thought we had 20 minutes, and my, the clock is, was it 10? It's 20 minutes for both of you. Oh, you split it, okay. Fine, my mistake. If there's no further questions on that, I'd just like to move briefly to the Bruton issue. Now, it's funny, because this is, as I pointed out, it's a structural error argument, because Mr. Moreno represented himself. But if we did need to show harm, there was harm here, because Mr. Moreno, representing himself, did not realize that when Ryan Davis testified that Oscar Rodriguez had told him about statements that my client made that were proof of planning and conspiracy and intent, the critical issue here, Mr. Moreno did not realize that and didn't object. And that, I've argued it as Bruton error, but it clearly shows that Mr. Moreno would have been better served by having an attorney, a competent attorney. In this case, a jailhouse informant, Ryan Davis, testified that Oscar Rodriguez, one of the co-defendants, made statements about a plan to assault and admitted that they assaulted Mr. Wiseman. And those statements included my client's offer, apparently, to go ahead and stab him. Okay, that goes to the conspiracy, doesn't it? It goes to the conspiracy, but it also goes to intent, because my client argued in his defense that he was drunk, and there was evidence that he was very drunk, and that he stabbed him in a momentary impulse because he had been disrespected. That was his defense. Okay, but he didn't say it was an accident. No, he didn't say it was an... He intended to stab him because he was insulted. Right, but the more serious charge was assault with intent to commit murder, which is what he was charged with and he was convicted of in Count 2. And the intent to commit murder, I mean, certainly, as I said, he admitted Counts 3 and 4, which were assault and assault with intent to create, assault with the infliction of great bodily injury. It looks to me like this evidence goes to the conspiracy, which he wound up getting dismissed. Your Honor, I don't think it's, I don't think it can be that compartmentalized. The issue of intent to commit murder was fundamental to the case. My client essentially testified, he testified he was mad, he wanted to hurt him, but he didn't intend to kill him. And there was other evidence to support that, including the testimony of, I think that the evidence that went to the conspiracy also bore on the assault to commit murder, the ultimate intent, the specific intent. How many times was the guy stabbed? Seventeen. But, Your Honor, he is a Mexican. That's not a good fact for you. No, Your Honor, I didn't commit the assault. No. This is, I mean, this is a Mexican mafia case and they are known for some violent behavior. It's not like he stumbled and accidentally cut the guy. No, Your Honor, but on the other hand, as he said and as Mr. Vasquez testified, frankly, if he had intended to kill him, he'd probably be dead. Well, he got rushed to the hospital. Well, actually it wasn't, you know, they delayed an hour and that's why the injuries were life-threatening. But be that as it may, I'm not here to criticize the Bureau of Prisons, but the problem is I don't, one cannot, the fact that there's sufficient evidence to convict him of assault with intent to commit murder doesn't mean that it was harmless, that the fact that this testimony about a plan came in was harmless. It's just simply not. It goes to the, I'm sorry, Your Honor. Were you going to ask a question? Oh, I, it's, the difference between harmless error and sufficiency is clear. And in this case, if that evidence hadn't come in, there would have been much, there would have been less, I mean, there would have been evidence, there would have been a lack of evidence rebutting Mr. Moreno's testimony that he didn't intend to kill. I would like to save my few seconds for rebuttal. You got it. Thank you. Thank you, Your Honor. Good morning. Good morning. Verna, we followed on behalf of Oscar Rodriguez. At a minimum, this case needs to be remanded for a full-blown discovery and evidentiary hearing on the undisclosed benefits to the informant. We know Why don't you bring a 2255? I'm sorry? Why don't you bring a 2255 and get the ball rolling? Well, I think that there's enough evidence in the record that we don't need to wait for a 2255 because Well, I mean, you have to wait for an appeal. I mean, maybe you'll win today, maybe you won't win today. You could have gotten your 2255 off and running. Well, I think that this Court needs to remand and not wait for a 2255 for a number of reasons. One, we know that there were undisclosed benefits when the subsequent trial of Oscar of, excuse me, Ralph Rocha, the CD that fortuitously made its way to co-counsel Mark Windsor's office, which showed the Oscar Johnson admitting that he had basically testified falsely when he said he didn't expect anything. And for this Court, I mean, the trial judge heard that evidence. Mr. Rocha was acquitted. We know from the Pacer dockets that this Court can take and must take judicial notice of that the government, and the government has conceded that they moved to reduce the sentences of all three of these informants, including Mr. Wiseman himself, with the Rule 35 motion. And the government has conceded in its answering brief that, in fact, that they did this. But the jury never heard that. And this Court ---- Conceded that they did what? Pardon me? Conceded what? What did they concede? They conceded that the government moved to reduce the sentences of ---- That's a fact, right? That's a stipulated fact, I gather. Well, I mean, if the government says in its answering brief that they did that ---- Yeah, but they don't agree that there was an agreement. I don't understand what your question is. I'm sorry. They never stipulated they had an agreement with these people. They, in fact, denied that. Right. They testified at the trial. And, in fact, there was extensive cross-examination trying to get them to admit, particularly with Mr. Johnson, trying to get him to admit that he did, in fact, expect something, and then the prosecutor got up and said, ask and answer, and then they cut the questioning off. And it is clearly, his testimony was clearly misleading, because in the tape-recorded telephone call that was played in Ralph Rocha's trial, he doesn't just admit that he's hoping, you know, that he's going to be rewarded for all of this. He says, as soon as the trial is over, as soon as that's done with, he submits the paper to the judge, and basically, man, it's so many words telling me, as soon as this stuff is all over with, you're going to be going home. That is not what Mr. Rodriguez's jury heard, and that would have made a significant difference, particularly because Oscar Johnson, when he was first interviewed by the law enforcement investigators at the prison, said he didn't see any weapons. But then he gets on the witness stand in front of Mr. Rodriguez's jury and says, oh, I saw a knife in Mr. Rodriguez's hand. You haven't really satisfied my concern about how you were able to raise this here for the first time, instead of bringing it up first in district court. Well, I think it was brought up in district court. No, you never argued that there was a secret agreement. Well, let me explain why I think we can say that here. Because, first of all, there was a motion for a new trial filed on the grounds that they said the CD was newly discovered. But there was also a motion to dismiss filed by Marino, joined in by Mr. Newman on behalf of Oscar Rodriguez, to dismiss because of discovery violations and for outrageous conduct, and in regard to the fact that exculpatory evidence was not disclosed, and because they requested discovery. But conspicuously missing from your list is an argument that there was a secret agreement that wasn't disclosed. I think it's certainly a plain error. It's very obvious that there was a secret agreement. Well, that hasn't been established yet. I think that Mr. I mean, if you have a district judge finding it, that's one thing. But it hasn't been found because there hasn't been a hearing yet. Well, that's why I'm asking this Court to remand for that hearing. I'm saying, why don't you bring a 2255? Because we know what the reality of a 2255 is, and I'll explain the difference in here. First of all, there was a discovery motion. There were motions. There were subpoenas filed. The government filed motions to quash the subpoenas. And there were post-trial motions arguing that there was misconduct. And we have all the evidence before us. And the other big case, I think, that supports my position about why this Court needs to remand rather than wait for a 2255 is the Kajoyan case. And in that case, the government, there was nothing in the record below to show that the informant had been given a deal, the absent informant. And yet Judge Kaczynski, you know, questioned the government, and finally they were forced to admit that there was an agreement. And we're not, I mean, the government, the U.S. Supreme Court has said time and again, the government has a duty to set the record straight at any stage of the proceedings. And the problem with the 2255 motion is Mr. Rodriguez will not be entitled to a lawyer to do a 2255 motion. I am a poor soul practitioner. I can't do this pro bono. I'll do what I can, obviously, but, you know, he has no right to appointment of counsel. The government, I've already made everything I, you know, can do by writing letters and e-mails and phone calls requesting the information be disclosed that is reflected in these PACER dockets showing that these individuals did, in fact, get reduced benefits. The government has yet to produce them. And this Court has enough, I think the Court has a responsibility to remand with instructions, particularly given that there were extensive, there was extensive litigation regarding discovery, and given the post-trial motions arguing misconduct. I think it's very clear that that was what was argued. I mean, if it wasn't as articulate as it should have been, say, you know, specifically that this is simply, you know, a secret deal, it's still, they still argued that it was an exculpatory failure to disclose impeachment evidence. It seems to me that that's one and the same thing. And if not, it's plain error or it's ineffective assistance of trial counsel. But I think this Court has a responsibility to do that. And this Court has remanded on a number of occasions when it comes out at, you know, there are a lot of unanswered questions. And certainly the tape recording that was played at Ralph Roach's trial, that Judge Klausner heard, that was the subject of post-trial motions, gives this Court the mandate to send this case back for full discovery hearing. Does the Court have any other questions?  Thank you, Ms. Weevil. Thank you. May it please the Court. Mark Yohalam on behalf of the United States. To begin with, the first issue of Mr. Moreno's denial of a continuance, which I think is the correct rubric to analyze this issue. I realize it can be looked at either as the denial of a substitution of counsel or as the denial of a continuance. Then there is overlap between the analysis there. Both are abuse of discretion standards of review. But I think a denial of continuance is the correct way to look at it because the Court expressed an openness to substituting counsel so long as it wasn't necessary to push the trial back again. And if you look at the cases on denial of continuances, they clearly contemplate, for example, in the Kelm case, the possibility of a denial of continuance preventing a defendant from substituting his counsel. So I do think the right way to look at it is as a denial of continuance. And I'll quickly go through why I think under that analysis there is no abuse of discretion. But under either standard, there is not abuse of discretion. There are five factors the Court has enumerated to look at, the first of which is whether there would be an inconvenience to witnesses, the Court, counsel, or parties by a continuance. And here it goes beyond merely an inconvenience. This is a high-security case involving a member of the Mexican Mafia and two Serrano gang members who are accused of having tried to kill another prisoner. Two of those defendants were facing another murder charge for which they are now serving life sentences for another prisoner. You have Mr. Moreno telling the Court when he testifies that if he had known that the victim was a cooperator, he would have made sure the victim was killed the moment he got off the airline. Now, in those circumstances, when the government's case is based around cooperator testimony, it's a particularly worrisome thing to have to continue to extend and extend the trial date. So it goes beyond mere inconvenience into actual risk to the witness's safety. The second factor is whether there have been prior continuances. In this instance, there had been two, and the trial date had been continued out over a year. The district court had been adamant that this would be a fixed trial date and that it wouldn't go further. The third factor, and this is where I think the third and the fourth factor are really quite close to the things that would be looked at as a denial of counsel, is whether there are legitimate reasons for the request for a continuance or whether it's the defendant's fault. And here, the record simply doesn't bear out that there was ineffective assistance on behalf of Mr. Moreno's counsel. What there was was a disagreement about trial strategy and a purported breakdown in trust. I say a purported breakdown in trust because there are strong indications that it was just a pretext for trying to continue the trial. Mr. Moreno was prepared to go to trial with the same defense counsel at the first trial date. And even at the second trial date, he said, if you'll only give me a couple more months in continuance, I'll see if I can work it out with my lawyer. And so in that context, it's hard to say that there really was the breakdown of trust that appellants described. It sounds much more like a pretextual reason to get the continuance that the court had just denied with respect to the other defendants. I wonder if you'd go on to Ms. Weeple's argument. Let me see if I understand what she's arguing and see if you can respond to it. I probably won't put it as articulately as she did. But after the trial, it comes to light that your witness who denied that he had an agreement with the government, there comes to light an inconsistent statement that looks like he did have an agreement with the government. And then after the trial, sure enough, he and another guy get their sentences reduced. Ms. Weeple said that merits inquiry. Why is she wrong about that? For a couple of reasons, Your Honor. First, the fact that a cooperator receives a benefit after making material truthful cooperation doesn't prove that there was an agreement prior to that cooperation being made. It doesn't disprove it either. That's correct. Why shouldn't there be an inquiry into what happened? To begin with, as Your Honor brought out in the prior conversation, this issue was not raised in the district court. The argument that was made in the district court was that the government had failed to turn over these tapes. As it turned out, the defense had these tapes. Specifically, Mr. Murillo's counsel had the tapes for a month before trial. All of the defendants had access to the tapes, may have had access to tapes before trial as part of their joint defense agreement, but certainly had access to them after trial. And this is not the argument they made. The argument they made was that it was failure to turn over the tapes, failure to turn over the fact of Mr. Johnson's subjective belief in a benefit that was problematic. It's only now in appeal for the first time that there's this argument about a secret agreement. But even that, I think, is not borne out by the record. When Mr. Johnson was subject to cross-examination on this issue under oath, what he said was that he was basically exaggerating to his family and his friends to give them comfort, to make them think that he would be getting out soon. Now that's what he was saying under oath. It's a perfectly reasonable explanation for what was done. And so the question here is whether, given that this issue wasn't teed up before, the court should consider it. And I think under the Flores-Payon case, none of the exceptions for when an issue can be raised on the first time on appeal are present. There's clearly not a change in the law, and it's clear this is not a purely legal issue. That's clear because what they're seeking is an evidentiary hearing. The final condition would be if there were exceptional circumstances for not raising it below. But I haven't heard anything like an exceptional circumstance articulated. I mean, it seems like the explanation is they had a lot of other issues they wanted to raise after trial, but there hasn't been anything that I've heard or read in the briefs to explain why this issue wasn't raised below. If it had been, then the court would have been able to do exactly what happened in the Torres-Ramos case that was the subject of counsel's recent 28-J letter. I think that case actually cuts against their position because it shows that this kind of an asserted problem could be aired in the district court. The district court could then have had an evidentiary hearing. In this case, the government denies that there is any secret agreement. The government concedes that there were benefits given, but there was no agreement. Obviously, if the district court had felt that an evidentiary hearing was appropriate, the AUSA who tried the case could have been deposed. He could have been testified under oath on this. There could have been additional cross-examination of Mr. Johnson if necessary. Then this issue could have been teased out. But now, instead it's being raised for the first time with no record having been prepared and with no reason for it having been raised so tardily. I think that's really why it's not appropriate for it to be raised now and why the argument is both meritless from a timing standpoint, but also I think unconvincing just on whether they've made a prima facie showing of any secret agreement. If they were right, every single time a cooperator subjectively believed he was going to get a benefit, it would be necessary to have an evidentiary hearing as to whether there was a secret agreement with the government. And that would, I suspect... I don't know what you mean by that. They have your guy on tape saying he had an agreement. Your Honor, with respect, I don't think that's what he's saying. Well, let's say you can interpret it that way. That's one reasonable interpretation, isn't it? I think the most aggressive interpretation that could be made of it was that there was an informal understanding that that is what would happen. Okay. And then you have what looks like the consummation of the deal afterwards. I mean, that would at least get you in the courthouse door, wouldn't it? No, I don't think so, Your Honor, because when he was cross-examined on this issue under oath, he explained that that interpretation, that most aggressive interpretation, wasn't right. That instead he was talking to his family and trying to give them comfort and assurances. He has no incentive at that point to lie and risk perjury. This is at the Roka trial? Yes. He had not yet gotten his deal, though. He hadn't gotten his time cut yet, had he? That's correct. So that's his incentive, arguably. Yes. If you think that the government was conspiring with him to deceive the court. I don't think anything. I'm saying these are the facts they have that say that they get a hearing over it. I mean, to me it sounds like there are two essential pieces of evidence there. One is the Johnson phone calls. And to set that aside for a second, the second is the fact that Mr. Johnson received a benefit after testifying. The fact that he received a benefit after testifying really strikes me as non-evidence of the fact of an agreement. Cooperators receive benefits all the time without a promise that they're going to get benefits. In fact, the usual circumstance is that what they have is some kind of an agreement that says, if you cooperate truthfully and completely, we will consider in our absolute discretion, whether to make a motion for a downward departure. That is not a secret promise guaranteeing a reduction in sentence. And so I think that second fact really has very little weight, which leaves only this phone call, which the defense had in which he says, you know, as I understand, he says something like, I'm pretty sure as soon as this is done, I'm going to get, the prosecutor is going to go to the court and file something, and I'm going to get out. And that alone is not enough to raise on appeal for the first time an argument of prosecutorial misconduct or of a Brady violation. I'm happy to turn to another issue, or I can discuss this further. Just briefly on the, to finish on the denial of a continuance for Mr. Moreno. I think if you look at the reasons that Mr. Moreno had, why he complained about the representation he was getting from defense counsel, those are the same reasons that appear time and again in decisions like slappy, this court's on bond decision in the Supreme court. I'm sorry. Slappy is the Supreme court's decision. This court's decision in Plumlee also penal decisions like Corona Garcia, Franklin, and Minda Sanchez. Those cases show time and again, the same kinds of complaints, such as a breakdown in trust or a feeling that counsel wasn't investigating thoroughly enough, or a feeling that counsel wasn't providing discovery quickly enough or thoroughly enough. And in all of those cases, the court found that that wasn't a basis for requiring a substitution of counsel. Here, those weren't either as the court raised earlier. There was interviewing. These witnesses would not have been a productive use of defense counsel's time. It's a reasonable trial strategy to decide to focus on other issues and not on the conspiracy charge. In fact, that strategy was vindicated by the fact that Mr. Moreno was acquitted of that charge. And in fact, just to clarify one piece of one statement earlier, defense counsel did interview two of the witnesses that Mr. Moreno asked her to interview. I realized that's not all 20 of the witnesses, which I gather were all of the defendants in the L unit cell block. All the prisoners in there. But I think it was a reasonable decision to make that those witnesses really wouldn't be able to testify as to the conspiracy issue or as to Mr. Moreno's subjective intent. When he was stabbing the victim 17 times the cases cited by the defense in favor of finding that they kept that substitution was required. I think are unpersuasive here, particularly the Walker case on which the defense relies. The three factors for deciding whether the district court had adequately looked at, had abused its discretion in denying substitution of counsel are the adequacy of the inquiry, the extent of the conflict and the timeliness of the request for new counsel in Walker. All three of those factors favored finding an abuse of discretion. The district court never said that the request for new counsel was untimely. The inquiry consisted of just three questions and the defense counsel didn't challenge the defendant's assertion that there was a serious conflict. Here we have 70 pages of transcript devoted to the district court's inquiry into this alleged conflict. Three hearings over three days. As already discussed, the extent of the conflict wasn't serious and there was disagreement. Defense counsel said that she had reviewed the discovery, that she had met with defendant in the district court, seemingly found her credible, said that she saw no sign of inadequate assistance. And finally, as to timeliness here, the district court emphasized the lack of timeliness in filing the request for a new new counsel. And in fact, it was untimely. If you look at cases like Franklin and Minda Sanchez, it's clear that what a major concern in the timeliness issue is whether getting a new counsel would require a continuance. And here there's no dispute about that because the court said you can have a new counsel if it won't require a continuance. And so it's clear here that it was untimely in that sense. It was also just untimely in a colloquial sense. This was brought three weeks before trial after having months and months during which he said that he was not happy with his representation. To turn quickly to the Bruton issue, to begin with Appellant, I think doesn't raise the extraordinarily high standard of review here. There has to be overwhelming probability that the jury didn't follow the curative instruction and devastating prejudice to the defendant. Neither of those is satisfied here. The devastating prejudice point, I think goes to what your honor was drawing out earlier, that there was ample evidence already establishing the crimes that were conviction that were found here. And so even if the jury had considered the evidence, it wouldn't have been devastating prejudice because it was effectively cumulative with the far stronger evidence, including video of the stabbing, the audio of the victim's screams while he's being stabbed, the eyewitness testimony, the victim's own testimony, and so forth. If you accept Appellant's argument, then the district court essentially had no option but to declare mistrial after a day or two days had passed, after its initial evidentiary ruling. But mistrial is extremely disfavored and a limiting instruction is the preferred alternative as the court says in Escalante. Moreover, notably, defendants did not move for mistrial when they filed a motion for reconsideration. So just to briefly say that the timeline of how this happens is the government begins asking questions of the witness, Mr. Davis. Some of those questions are raising this arguably hearsay issue. There's no objection. After several questions go in, finally a hearsay objection is made. Not a brutal objection, but a hearsay objection. The court denies the hearsay objection. Two days then pass and then defendants file a motion for reconsideration. That's docket number 546. I'm not sure it's in the ER. But the only relief that's requested there is a limiting instruction. Then a few days later the court has a hearing on it. At that hearing, again, the only thing defendants request is a limiting instruction. Now that may, I'm not sure that changes the standard of review. I don't think you can really get any higher than the standard they already have to meet. But I think it bears heavily on whether there was, in fact, an overwhelming probability that the jury would be unable to disregard this because if the people on the ground, if the defendants and defense counsel felt that was the case, they would have moved for a mistrial. But they didn't. All they asked for was a limiting instruction. There are other indications that I think that this could not have had the devastating effect that the appellants argue. It was seven pages of testimony that we're talking about. There was one witness out of many, many witnesses at trial. He was mentioned only in passing in the opening statement. It was redundant with what the victim had overheard and what the video showed. And this is a lengthy, lengthy trial. So the idea that this was sort of the climax of the trial, I think, is not borne out. Moreover, if the jury had disregarded the instruction and believed the testimony, as Your Honor drew out, it really went to conspiracy. So it's hard to see how this could have had a devastating effect but not have been sufficient to lead to a conspiracy conviction. I think the lack of a conspiracy conviction is strong evidence that the jury did not disregard the instruction and, in fact, followed it. This case is quite distinct from Bruton. As the Supreme Court held in Marsh, Bruton is a very narrow exception to the general rule, assuming that a jury can follow instructions. And it's different from Bruton in two respects. First, as the brief sets out, this is not testimonial hearsay, as it was in Bruton. And I think under Davis that's clear. This is two prisoners talking in the yard, or it's a group of co-conspirators talking. Neither of those kinds of statements is testimonial. Second, the limiting instruction is very different from what it was in Bruton. In Bruton, what the court said was, you may and, in fact, must consider this evidence when thinking about Defendant 1. But you may not consider it when thinking about Defendant 2. That put the jury in the extremely difficult position of receiving the challenged testimony into evidence, but having to put it out of their mind half the time. Here, the jury was told to disregard it entirely. That's a much easier instruction for them to follow. And that's a distinction that the Third Circuit noted in a case called United States v. Lipowitz. It's not in the answering brief, and unfortunately, I discovered the case so late that I didn't have time to file a 28-J letter. The citation to it is 401 F. Second 591. If you'd wrap up, please. I think with that, the other issues are submitted on. Thank you. Thank you. Ms. Landau.  Excuse me for a second. Yes. Judge Hall makes a good point. Would you give the citation to Lucy on one of our sheets and make sure counsel get a copy of it, please? Yes. A couple of points. First of all, under Ninth Circuit precedent, the request for a continuance, which was three weeks before trial, is timely. The government has given a lot of emphasis to prior delays, and significantly, the delay that the court was most concerned about was the one that occurred because of the need of government counsel for medical treatment. The defendant is in a catch-22 here. If he complains right away, he hasn't tried. And if he delays and tries, then he's running the risk of untimeliness. And here, he acted three weeks before trial, which under Nguyen is timely. The other issue that I must take issue with this is that the idea that counsel conducted a reasonable, that she had a reasonable strategy. In fact, she didn't. And, you know, Mr. Moreno represented himself, and as a result, the jury hung on count one. The jury was not acquitted. But I think there's nothing suggesting that counsel's, quote-unquote, trial strategy of arguing that the government's case was blown out of proportion was reasonable. What the record shows is that she didn't investigate. Maybe she interviewed two witnesses, but she wasn't interested in mounting a defense against the conspiracy. And given that that was the only count that carried a life sentence, that is not reasonable. It is not reasonable to undertake a strategy in which you focus on the lesser charges and ignore the greater. That is a strategy that's designed for failure. Thank you, Your Honor. Thank you, Ms. Moreno. Ms. Wiebel. I just want to say I think there's plenty in the record of motions, the discovery motions, the post-trial motions, for this court to remand for an evidentiary hearing. I think that the government would want to clear this up, and so far they haven't done that. A 2255 motion will be too late. I can see what the government's going to be, the response would be to a 2255 motion should Mr. Rodriguez file one,  These tapes raise a lot of questions. More questions than they answer. The record, I think, is clear, and the discovery issues were certainly well-preserved. This court should remand for a hearing. This court, the precedent, Bernal, Obeso, Blanco, there are a number of cases where this court has done that when these kinds of questions have been unanswered on appeal, and that's what I would ask the court to do. Thank you. Thank you. Thank you, ladies and gentlemen. The case just argued is submitted. We'll stand at recess for the morning. John and Isaac, I see you guys for a second. Thank you.
judges: Farris, Hall, Silverman